Between FANNY GOODFELLOW, appellant, and JOHN B. INSLEE and others, respondents.

If a receipt be altered by the party holding it, or by the procurement of such party, such alteration vitiates the receipt as an instrument of evidence. But if the mutilation of the instrument be made by a stranger, without the cooperation of the party, its legal operation is not changed so long as it remains legible.

The alteration not being in the handwriting of the party holding the receipt, and in the absence of all direct or circumstantial evidence except what arose from the fact that the receipt was written in the receipt book of the party, which was in her possession, it was *held* that the receipt was not vitiated, but should be received in evidence of payment.

The mere cutting of the margin of the paper upon which a bond is printed or written is not a mutilation of the instrument itself.

The case sufficiently appears in the opinion of the court, delivered by the

CHIEF JUSTICE. The first exception is founded on the decree of the Chancellor, disallowing the receipt of June 16th, 1849, signed by Gage Inslee in the receipt book of the appellant. This receipt the complainant insists is for two sums, *viz.* $83 and $94.50, amounting to $177.50, and she claims that amount should be allowed.

The master allowed $34.50, deeming that the amount for which the receipt was given.

The Chancellor, deeming it impossible to ascertain for what sum the receipt was originally given, and being of opinion that it had clearly been altered in material particulars, disallowed the receipt entirely; and properly so,

if the true amount of the receipt, as originally given, cannot be ascertained. The claim of the appellant to have the sums of $83 and $94.50 allowed upon that receipt is clearly inadmissible. The receipt, it is obvious, was originally given for no such sum, nor in fact does it now read for such amount. The only question upon this exception is, whether the master was right in allowing $34.50 as the true amount of the original receipt, or whether the Chancellor was right in entirely disallowing it as an altered paper. Whether the original amount of the receipt can be clearly and certainly ascertained, is a mere question of inspection. There is no evidence independent of the paper itself. It appears to me that the master was right in holding that the original receipt was given for $34.50. That is apparent by close inspection. Then, should the receipt be entirely rejected as an altered paper? If altered by Mrs. Goodfellow herself, or by her procurement, it imports fraud or improper design on her part, and clearly vitiates the receipt as an instrument of evidence. But if the mutilation of the instrument was by a stranger without the participation of Mrs. Goodfellow, it is a mere spoliation; and so long as it remains legible, it does not change its legal operation. 1 *Greenl. Ev.* § 566.

The alteration is clearly not in the handwriting of Mrs. Goodfellow, or of either of her daughters, who were witnesses in the cause. Nor is there any direct or circumstantial evidence of its alteration at her instance, except what arises from the fact, that the receipt was written in her receipt book, and comes from her possession. That alteration may have been made by the act of a zealous ill judging friend or relative without her participation. In the judgment of charity, I am disposed so to adjudge, and to allow the exception, holding with the master, that the appellant should be allowed upon this receipt $34.50.

The second exception to the decree is, that the Chancellor did not allow a credit of $100, claimed to have been endorsed on the bond, on or about the day of its

date. It is evident, on inspection, that a slip has been cut from the margin of the bond, and the evidence shows satisfactorily that a receipt for some amount was upon it; but what amount, or whether for principal or interest, is not clearly shown. The Chancellor concurred with the master in holding that there was a full extinguishment of interest up to the 19th of October, 1844, regarding the receipt cut from the bond as containing an amount of interest not included in the other receipts endorsed upon the bond. In this, I think, he decided correctly. There are certainly circumstances creating a suspicion that the receipt destroyed was for a larger amount; but there is not sufficient proof to warrant the court in so deciding.

The third exception is, that the Chancellor disallowed the other exceptions of the defendant below to the master's report. There is no evidence in the case to sustain these exceptions. The report in said particulars was correct, and the order of the Chancellor overruling the exceptions should be sustained.

The fourth exception is, that the obligee mutilated the bond, cutting off a part of the margin, and mutilating the receipts upon it. The answer is, that the instrument itself is not mutilated. The mere cutting the margin of the paper upon which a bond is printed or written is not a mutilation of the instrument itself. It is no part of the bond, as a legal instrument, where the paper has been mutilated for the purpose of destroying a receipt or other endorsement upon the paper: the strongest presumptions may be raised against him touching the instrument mutilated or destroyed, but it is no mutilation or alteration of the bond itself, and cannot vitiate that instrument.

The decree of the Chancellor was reversed by the following vote:

*For affirmance*—None.

*For reversal*—CHIEF JUSTICE, Judges HAINES, RYERSON, CORNELISON, RISLEY, VALENTINE, ELMER, OGDEN, SWAIN, VREDENBURGH, POTTS, WOOD.